## Hartley *versus* Decker.

1. In a written agreement D. stipulated that he was to peel all the hemlock timber from eight inches up to the largest on the farm of B. by the middle of March 1874, and start the bark on good roads convenient to the teams. When it was so started and measured D. was to have one-half of the bark in payment for his labor. *Held*, that this was an entire contract, and that until D. had fully complied with his agreement he had no title to any portion of the bark.

2. Undecided whether this was a case in which the doctrine of recoupment would apply in case the jury should find that the defendant had substantially complied with the contract.

March 19th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Susquehanna county* : Of January Term 1879, No. 83.

Trover by E. C. Decker, against Silas Hartley, to recover damages for the conversion of a quantity of bark, which had been cut on the land of plaintiff.

The plaintiff was the owner of a farm and entered into a written agreement with B. F. Decker, by which it was agreed that said " B. F. Decker is to peel all the hemlock timber, from eight inches up to the largest, and start all the bark on said farm, and is to have one-half the bark after it is started to pay him for his labor.   The bark is to be divided when started, and to be started as soon as the middle of March 1874, in good order and shape—to be measured in rack, and on good roads to the tannery."

B. F. Decker being indebted to the defendant sold his interest in the bark to Hartley and assigned his interest in the contract to him.   Hartley was to get out the bark, and after disposing of his half, was to allow B. F. Decker the amount received for it over the debt and expenses.   Hartley afterwards obtained a confession of judgment from B. F. Decker, upon which B. F. Decker's interest in the bark was sold at constable's sale, and bid in by Hartley. The latter it appeared had hauled out and started the bark in accordance with the terms of the contract before the middle of March 1874.

At the trial before Jessup, P. J., the plaintiff claimed, that Hartley had acquired no interest in any of the bark, because some trees had been left standing which should have been peeled, and the bark was not gathered up cleanly, and, therefore, the contract had not been fully complied with ; and further, that being a sale of an unascertained quantity of bark Hartley could claim no title to or interest in it until measured and divided.

The evidence upon the question of full performance of the contract was conflicting.   Defendant claimed, that, as soon as there was a severance of the timber by B. F. Decker so as to make it personal

[Hartley v. Decker.]

property, and especially as soon as E. C. Decker's material (hemlock trees) and B. F. Decker's labor were blended together, under the contract, in a new product, an article of merchandise and traffic called *bark*, that commodity was at once *joint* property, each party having an equal interest in it; and, although by the terms of the agreement not to be *divided* until a future time (when the work was completed), it was still owned by the parties as tenants in common, and that the only question for the jury, was whether Hartley took more than his own part, one-half of the bark.

In the general charge, the court, inter alia, said : " [We construe this contract to mean what it says, that B. F. Decker was to peel *all* the hemlock timber from eight inches up to the largest, and start all the bark on the farm of plaintiff by the middle of March 1874. When this was fully done B. F. Decker or his assignee had the right to call upon the plaintiff to divide the bark, and not until this was done would the title to the bark pass to the defendant.

"If you find from the evidence that this contract was fully performed by B. F. Decker or his assignee, that the bark was measured as claimed by the plaintiff, and that the defendant only took away one-half of the bark, then the plaintiff is not entitled to recover. But if on the other hand you find that B. F. Decker did not fully perform the contract, then no title passed to defendant and the plaintiff would be entitled to recover], or if you find that the contract was fully performed and the defendant took away more than one-half the bark, then for such excess the plaintiff would be entitled to recover.

"[If the defendant had complied substantially with the contract, and the plaintiff had refused to divide the bark and allow him to take any of it, I do not say that he would be without remedy upon the contract; but that is not the question we are trying.]"

Verdict for plaintiff. The defendant took this writ, his first and second assignments of error being respectively the foregoing portions of the charge in brackets.

*A. O. Warren* and *W. M. Post*, for plaintiff in error.—The court treats the written agreement between E. C. and B. F. Decker, as if it were an executory contract, for the *sale* of bark, under which no title could pass, until there was measurement and delivery, and as if the parties occupied the relations of employer and employee, instead of construing it to be, what it palpably is, a contract for work to be done " on shares," a peculiar kind of an agreement, by which one party is to furnish materials and the other by his labor, to work them into some kind of a product, which is to be the joint property of both, in such proportions as they shall agree upon.

This case is precisely analogous to that of a *cropper* who raises a field of corn upon the land of another " on shares." Although

not to be divided until harvested, still from its inception until the division is made, the cropper and owner of the land are tenants in common of the crop : Stafford *v.* Ames, 9 Barr 343; Creel *v.* Kirkham, 47 Ill. 344 ; Bernal *v.* Hovins, 17 Cal. 541 ; Carr *v.* Dodge, 40 N. H. 403 ; Williams *v.* Nolen, 34 Ala. 167 ; Tripp *v.* Riley, 15 Barb. 333 ; 1 Schoaler Per. Prof. 194 ; White *v.* Brooks, 43 N. H. 402. The value of the labor over and above the damage the plaintiff might have sustained, because there was not a full performance of the contract, should at least be allowed as an equitable set off or in mitigation of the damages claimed : 2 Parsons on Contracts 136 ; Hyde *v.* Cookson, 21 Barb. 92 ; Tr. & H. Pract , vol. 1, part 1, 114 ; Romig *v.* Romig, 2 Rawle 241 ; Peterson *v.* Haight, 1 Miles 250 ; Saam *v.* Saam, 4 Watts 432. See also upon the doctrine of recoupment applied to cases of tort, Sedgwick on Measure of Damages, 549 to 551 and notes.

*McCollum & Watson*, for defendant in error.—This contract was executory and no title to the bark could pass to B. F. Decker, or his assignee, until it was *all* peeled and all started and measured, &c. : Clemens *v.* Davis, 7 Barr 263 ; Dennis et al. *v.* Alexander, 3 Barr 50; Lestor *v.* McDowell, 6 Harris 91.

There was no question of set-off or equitable defence raised in the court below, and no such defence having been offered on the trial it cannot be made here.

Mr. Justice Paxson delivered the opinion of the court, March 31st 1879.

We find no error in that portion of the charge embraced in the first assignment. The construction placed upon the contract by the learned judge was entirely correct. So far as it related to the hemlock bark, it was an entire contract. It was expressly stipulated therein that B. F. Decker was to peel all the hemlock timber from eight inches up to the largest on the farm of the plaintiff below by the middle of March 1874, and start the bark on good roads convenient to the teams. When it was so started and measured in rank, the said Decker was to have one-half of the bark to pay him for his labor. Until he had fully complied with his agreement, he had no title to the bark. It is conceded the title was in the plaintiff when the agreement was made. Decker acquired title, if at all, by virtue of said agreement. That only gave him title upon compliance with its terms. There is no obscurity in the language, and there is nothing in it to lead us to the conclusion that Decker was to have title to each cord of bark as it was peeled. That would enable him to peel only so much as was most convenient, and could be got out to the best advantage. They might have so contracted, but did not. The case of the cropper in Stafford *v.* Ames, 9 Barr 343, is not in point. There

[Hartley v. Decker.]

the agent of the cropper was prevented from cutting and threshing the wheat; he was illegally kept out of possession; the owner of the land cut the grain and refused to deliver any portion of it to the cropper. It was held that the latter could maintain trover for his share. There was no such agreement there as we have here. I apprehend that it is competent for a cropper to agree that the title to the grain shall remain in the owner of the land until it is divided. Where the parties to a contract make their own law, it is binding upon them, unless it is in violation of the law of the land, or offends against public policy.

The second assignment raises a question that was not made in the court below. The learned judge charged: "If the defendant had complied substantially with the contract, and the plaintiff had refused to divide the bark and allows him to take any of it, I do not say that he would be without remedy upon the contract, *but that is not the question we are trying.*" If there is any error here it must be in the words I have italicised. It was contended they excluded from the jury the consideration of any question of equitable defence; that this was a case in which the doctrine of recoupment would apply in case the jury should find that the defendant had substantially complied with the contract. There are many cases in actions of *tort*, in which this equitable principle has been applied to avoid circuity of action. Whether the case in hand comes within the rule, we are not called upon to decide, as an examination of this record clearly shows that the cause was not tried below upon any such theory. On the contrary, it is manifest the contention there was whether the plaintiff had the title and right of possession to this bark at the time Hartley took it and converted it to his own use. The defendant went to the jury upon that issue, and so far as this record shows, upon no other. No points were put to the court, nor was any instruction asked for in regard to the defendant's right to recoup. Hence, the learned judge was not inaccurate when he told the jury that the defendant's remedy upon the contract was "not the question we are trying." He was merely stating a fact as to which he is amply sustained by the record. A judge who submits a case to a jury in the manner in which it is presented by counsel, ought not to be convicted of error for not presenting it in some other way to which his attention had not been called.

Judgment affirmed.